UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NATIONAL PRODUCTS ASSOCIATION,

                              Plaintiff,

        -against-

LETITIA JAMES, in her official capacity as,
New York Attorney General,

                             Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-cv-08912 (JMA) (LGD)

FILED
CLERK
3:19 pm, Jun 13, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Plaintiff National Products Association—a nonprofit trade organization allegedly representing over 700 members that sell, manufacture, and distribute dietary supplements—brings a pre-enforcement, facial challenge to New York's Assembly Bill A5610, codified at NY Gen. Bus. Law § 391-oo (collectively, "Statute"), which restricts the sale of certain dietary supplements used for weight loss and muscle building to minors. (ECF No. 30.)

Seeking to prevent enforcement of the Statute, Plaintiff filed the instant Motion for a Preliminary Injunction against Defendant Letitia James in her official capacity as New York Attorney General. (ECF No. 37.) For the following reasons, Plaintiff's motion for a preliminary injunction is DENIED, and this action is DISMISSED without prejudice for lack of subject-matter jurisdiction.[1]

---

[1] As a result, Defendant's Motion to Dismiss is also DENIED without prejudice. (ECF No. 41.)

# I.     BACKGROUND[2]

## A.     <u>Statutory Background</u>

Starting in 2020, the New York State Legislature sought to address the growing "serious public health problem" of eating disorders that is purportedly "affecting youth and adults of all races, ages, and genders." Sponsor's Mem. in Support for A10138 (2020), at 1 (<u>see</u> Hingerton Decl., Ex. B, ECF No. 37-3); <u>accord</u> Sponsor's Mem. in Support, in Bill Jacket for Ch. 558 (2023), at 1–2 (<u>see</u> Hingerton Decl., Ex. A, ECF No. 37-2). The chief concern for the Legislature was that eating disorders are a mental health condition that may be identified and diagnosed based on "the presence of what clinicians call unhealthy weight control behaviors"—one of which is the use (or misuse) of dietary aids to promote weight loss or to build muscle. Sponsor's Mem. in Support, in Bill Jacket for Ch. 558 (2023), at 1–2. A second concern for the Legislature was that weight loss or muscle building dietary supplements were readily available for purchase "alongside multivitamins and other supplements largely regarded as safe," despite several reported instances of death and serious harms resulting from their essentially unregulated use. (<u>Id.</u>)

On December 23, 2022, Governor Kathy Hochul vetoed Assembly Bill 431-C. (<u>See</u> Ex. B, SAC.) The Governor first noted that "she share[d] the concerns of the sponsors of this bill" and "desired to address the marketing of … diet pills and dietary supplements to minors." (<u>Id.</u>) Citing the United States Food and Drug Administration's lack of "oversight over the safety and efficacy" of diet pills and dietary supplements, Governor Hochul acknowledged "concerns … about dangerous ingredients and the links to eating disorders" that these products allegedly cause—

---

[2] This Memorandum and Order draws its facts from Plaintiff's Second Amended Complaint (ECF No. 30 ("SAC")); Plaintiff's Memorandum of Law in Support of its Motion for a Preliminary Injunction (ECF No. 36-1 ("Pl. Mot.")); Plaintiff's Affidavits in Support of its Motion for a Preliminary Injunction (ECF Nos. 36-2 ("Dr. Fabricant Aff."), 36-3 ("Emme Aff.")); Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 37 ("Def. Opp.")); Defendant's Declaration in Support of its Opposition to Plaintiff's Motion for a Preliminary Injunction (ECF No. 37-1-5 ("Hingerton Decl.")); and Plaintiff's Reply Memorandum of Law in Support of its Motion for a Preliminary Injunction (ECF No. 39 ("Pl. Rep.")).

"particularly in young people." (Id.)  She also expressed that "[t]his legislation would require the Department of Health (DOH) to determine what products should be limited under this new law." (Id.)  Without "the expertise necessary to analyze ingredients used in countless products," Governor Hochul concluded that the DOH was "not equipped to create a list of restricted products."  (Id.)  For this principal reason—among others—Governor Hochul was "constrained to veto th[e] bill" and thus "disapproved" it.[3] (Id.)

Following several rounds of revisions, the Legislature enacted A5610 on October 25, 2023—the Statute at the heart of this action.  See Ch. 558, 2023 N.Y. Laws.  The Statute provides that no person, company "or other entity shall sell or offer to sell or give away, as either a retail or wholesale promotion, ... [a] dietary supplement for weight loss or muscle building within this state to any person under eighteen years of age."  Ch. 558, § 1, 2023 N.Y. Laws (codified at N.Y. Gen. Bus. Law § 391-oo(2)).  A "dietary supplement[4] for weight loss or muscle building" is defined as "a class of dietary supplement as defined in section three hundred ninety-one-o of this article that is labeled, marketed, or otherwise represented for the purpose of achieving weight loss or muscle building." Gen. Bus. Law § 391-oo(l)(a).  Exempted from the Statute's age-based sales restriction are "protein powders, protein drinks and foods marketed as containing protein unless the protein powder, protein drink or food ... contains an ingredient other than protein which would, considered alone, constitute a dietary supplement for weight loss or muscle building."  Id.

The Statute also contains provisions clarifying its scope and guiding its enforcement.  In particular, the Statute clarifies that a supplement is "labeled, marketed, or otherwise represented

---

[3] Governor Hochul also stated: [i]t would … be unfair to expect retailers to determine which products they can and cannot sell over the counter to minors, particularly while facing the threat of civil penalties."  (Id.)

[4] "Dietary supplement" is defined, in relevant part, as an ingestible product that "contains one or more of the following dietary ingredients: a vitamin, a mineral, an herb or other botanical, an amino acid ..." and which is labeled as a "dietary supplement" under federal law.  See Gen. Bus. Law § 831 (renumbered from Gen. Bus. Law § 391-o).

3

for the purpose of achieving weight loss or muscle building" where its "labeling or marketing bears statements or images that express or imply that the product will help ... modify, maintain, or reduce body weight, fat, appetite, overall metabolism, or the process by which nutrients are metabolized" or "maintain or increase muscle or strength." Id. § 391-oo(6)(b)(i)–(ii).  The Statute also directs courts in enforcement proceedings to consider—among other factors—whether a dietary supplement contains certain ingredients, as the inclusion of such ingredients commonly associated with weight loss or muscle building may make it more likely to bring a product within the Statute's restrictions.  Id. § 391-oo(6)(a)(i)–(iii).  Such ingredients include: (1) steroids; (2) "creatine, green tea extract, raspberry ketone, garcinia cambogia, green coffee bean extract;" or (3) "an ingredient approved by the federal Food and Drug Administration for weight loss or muscle building." Id.  Further, the Statute provides that a dietary supplement may be subject to the age-based sales restriction through the actions of a retailer by: "placing signs, categorizing, or tagging the supplement with statements" suggesting that the supplement will impact weight, fat, appetite, metabolism, muscle or strength, or by "grouping the supplements with other weight loss or muscle building products in a display, advertisement, webpage, or area of the store."  Id. § 391-oo(6)(d)(i)–(iii).

      The Statute requires brick-and-mortar retailers who directly sell covered products to the public to comply with its age-based sales restriction.  See id. § 391-oo(2).  Specifically, the Statute directs retail establishments to require "proof of legal age" by means of a driver's license (or other type of authorized identification) at the point of sale.  Id.  Online retailers who sell covered products must use a method of mailing that requires proof that "the person who signs to accept delivery of the shipping container" is at least eighteen years of age.  Id. § 391-oo(4)(b).

      The Attorney General, in her discretion, is authorized to enforce violations of the Statute through a special proceeding in state court.  Upon notice to the alleged offender, and if a court

finds a violation after considering the enumerated factors set forth in the Statute, the court may issue an injunction and impose a civil penalty of no more than $500 per violation. Id. § 390-oo(5). Although the Statute was not in effect at the time Plaintiff commenced this lawsuit, it subsequently took effect on April 22, 2024, meaning that the status quo would now be altered by any injunction against the Statute. See Ch. 558, § 2, 2023 N.Y. Laws.

**B.      Procedural History**

On December 4, 2023, Plaintiff filed this action. (ECF No. 1 ("Compl.").) After the Attorney General sought permission to move to dismiss, (ECF No. 13), Plaintiff amended its Complaint twice over the course of almost four months. (ECF Nos. 25 ("Am. Compl."), 30 ("SAC").) In the Second Amended Complaint ("SAC"), the current operative pleading, Plaintiff seeks a declaration that the Statute is facially invalid and an injunction barring the Attorney General from enforcing it. (ECF No. 30.) Despite an awareness of purportedly "looming harm" as early as February 7, 2024, see ECF No.16, at 3, Plaintiff deliberately waited until April 1, 2024 —more than five months after the Statute was passed and almost four months after this action was commenced—to take any steps towards seeking preliminary injunctive relief. (ECF No. 29.) Defendant opposed and sought to make a motion to dismiss the SAC. (ECF No. 31.) The Court held a pre-motion conference on April 17, 2024, at which it stayed the matter pending the Hon. Andrew L. Carter, Jr.'s anticipated decision in Council for Responsible Nutrition v. James. 2024 WL 1700036 (S.D.N.Y. Apr. 19, 2024) ("CRN"), appeal filed, No. 24-1343 (2d Cir. May 15, 2024).

On April 19, 2024, Judge Carter issued the CRN decision, denying a similarly situated plaintiff's request for a preliminary injunction against the Statute. See CRN, 2024 WL 1700036, at *1. There, Judge Carter found that a similarly situated organizational plaintiff had no likelihood of success on the merits of its claims. He held, in relevant part, that: (1) the Statute was not void for vagueness; (2) the Statute was a valid exercise of police power with a rational basis; and (3)

5

the Statute was not preempted by federal law. See id. at *4–9. In addition, Judge Carter found that despite the plaintiff's claims of a constitutional violation, it had not established irreparable harm, id. at *9–10, and it had not established preliminary relief would serve the plaintiff's own interests (rather the public's), id. at *10.

After receiving a copy of the CRN decision, this Court held a status conference on April 23, 2024. (ECF No. 33.) There, the Court acknowledged that Judge Carter considered, and then rejected, selfsame federal preemption and void-for-vagueness claims that NPA was poised to assert in its preliminary injunction application. (See Apr. 23, 2024 Conf. Tr.) After communicating its agreement with Judge Carter's void-for-vagueness and federal preemption analyses, the Court noted it would allow Plaintiff to make a limited motion for a preliminary injunction on a claim that was not raised in CRN—that the Statute violated the negative corollary within the Commerce Clause (i.e., the dormant Commerce Clause). (Id.; see U.S. CONST., Art. I, § 8, cl. 3.) The Court also directed Plaintiff to address (1) its standing to bring its preliminary injunction motion and (2) its months-long delay in bringing the instant application (which the Court found troubling). (Id.) Further, the Court granted the Attorney General's request to make a motion to dismiss the SAC and directed the parties to confer and propose a briefing schedule "forthwith."[5] (ECF No. 34.) Notwithstanding this express direction from the Court to proceed expeditiously, Plaintiff again waited and then sought a May 6, 2024 date to make its preliminary injunction motion. (ECF No. 35.)

## II.   DISCUSSION

"This case begins and ends with standing" under Article III of the Constitution. Carney v. Adams, 592 U.S. 53, 58 (2020). As a threshold matter, the party invoking federal jurisdiction

---

[5] The Court ordered Defendant to file her fully-briefed motion to dismiss by June 14, 2024. (Elec. Order, May 1, 2024.) On June 13, 2024, Defendant timely filed her fully-briefed motion to dismiss. (ECF No. 41.)

6

"bears the burden of establishing" standing. Faculty v. N.Y. Univ., 11 F.4th 68, 74 (2d Cir. 2021), cert. denied sub nom. Fac., Alumni, & Students Opposed to Racial Preferences v. N.Y. Univ., 142 S. Ct. 2813 (2022). When, as here, "a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011) (quoting Lujan v. Nat'l Wildlife Fed'n (Lujan I), 497 U.S. 871, 907 n.8 (1990)). "Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot rest on such mere allegations, as would be appropriate at the pleading stage, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Id. (quoting Lujan v. Defs. of Wildlife (Lujan II), 504 U.S. 555, 561 (1992)) (internal quotation marks and brackets omitted).

In this case, Plaintiff sues "in its representative capacity" on behalf of its members—not to vindicate its rights as an entity with goals and projects of its own. (SAC ¶ 16; see also Pl. Mot. 3.) An organization has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[6] Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (SFFA), 600 U.S. 181, 199 (2023). This species of standing doctrine is often called "associational standing." Faculty, 11 F.4th at 75 n.28 (quoting Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998)).

To satisfy the first prong of associational standing, i.e., that its members would otherwise have standing to sue in their own right, a plaintiff "must show that one or more of its members has:

---

[6] An organization may also sue on its own behalf. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 n.19, (1982). To do so, it "must independently satisfy the requirements of Article III standing." Knife Rights, Inc. v. Vance, 802 F.3d 377, 388 (2d Cir. 2015). That method by which organizational plaintiffs can establish standing to sue is irrelevant here.

7

(1) 'suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; [and] (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Id. at 74 (quoting LaFleur v. Whitman, 300 F.3d 256, 269 (2d Cir. 2002) (internal quotation marks omitted)).

If an organizational plaintiff fails to establish standing, the court "need not address the factors to be considered in deciding whether to award a preliminary injunction" and should instead deny the motion and dismiss the case for lack of subject matter jurisdiction. Rojas v. Cigna Health & Life Ins. Co., 793 F.3d 253, 259 (2d Cir. 2015) (affirming denial of motion and dismissal of case where the plaintiff failed to establish standing to move for a preliminary injunction); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 251 (2d Cir. 2008) ("Appellants' motion for a preliminary injunction should therefore have been dismissed for lack of jurisdiction, rather than on the ground that appellants are unlikely to succeed on the merits of their action."); see also Munaf v. Geren, 553 U.S. 674, 691 (2008) ("Review of a preliminary injunction is not confined to the act of granting the injunction, but extends as well to determining whether there is any insuperable objection, in point of jurisdiction or merits, to the maintenance of the bill, and, if so, to directing a final decree dismissing it." (cleaned up); Do No Harm v. Pfizer Inc., 96 F.4th 106, 120 (2d Cir. 2024) ("[W]hen a court determines it lacks subject matter jurisdiction, it cannot consider the merits of the preliminary injunction motion and should dismiss the action in its entirety.")). In other words, Article III standing is "always an antecedent question, such that a court cannot resolve contested questions of law when its jurisdiction is in doubt." Do No Harm, 96 F.4th at 120–121 (internal quotations and citation omitted). That is the case here.

A. **Article III Standing**

Because Plaintiff brings this action as an association on behalf of its members, it must satisfy the three requirements for associational standing explained above. See Faculty, 11 F.4th at 74. Defendant argues, among other things, that Plaintiff has not established the first prong—that its members would otherwise have standing to sue in their own right. (Def. Opp. 8–10.) For the below reasons, the Court agrees.

1. **Identifying NPA Members.**

As a preliminary matter, in the context of a preliminary injunction motion, the Second Circuit requires that "a plaintiff association seeking to establish standing on the basis of injuries to its members identify at least one injured member by name." Do No Harm, 96 F.4th at 114. There is no dispute that Plaintiff satisfies Do No Harm's "naming names" requirement in this case. (See Ex. A-1, SAC, ECF No. 30; see also SAC ¶¶ 70–71; Ex. C, Pl. Mot, ECF No. 36-3.)

2. **Imminent Injury-In-Fact.**

Defendant challenges only the injury-in-fact component of associational standing.[7] (See Def. Opp. 8–10.) "[T]he injury-in-fact requirement ... helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). To establish an injury-in-fact, an individual plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo,

---

[7] To reiterate, an organization has associational standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." SFFA, 600 U.S. at 199. Only the first prong is at issue here; Defendant appears to concede that Plaintiff satisfies the second and third prongs of associational standing. (See Def. Opp. 8–10.) To satisfy the first prong, i.e., that its members would otherwise have standing to sue in their own right, a plaintiff organization "must show that one or more of its members has: (1) 'suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; [and] (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Faculty, 11 F.4th at 74 (quoting LaFleur, 300 F.3d 256 at 269) (internal quotation marks omitted).

Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan II, 504 U.S. at 560). Moreover, "[t]o establish standing to obtain prospective relief, a plaintiff 'must show a likelihood that he will be injured in the future.'" Carver v. City of New York, 621 F.3d 221, 228 (2d Cir. 2010) (quoting Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004)). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" Susan B. Anthony List, 573 U.S. at 158 (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398 414 & n.5 (2013)); accord Chevron Corp. v. Donziger, 833 F.3d 74, 121 (2d Cir. 2016). Importantly, however, "allegations of possible future injury are not sufficient" to establish an injury-in-fact. Clapper, 568 U.S. at 409 (cleaned up and emphasis added) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes ...." (internal quotation marks omitted)).

Plaintiff alleges that its members will suffer two classes of injuries due to the Statute. First, Plaintiff asserts that its members will be subjected to enforcement actions that could lead to substantial monetary penalties because they "are actively engaged in conduct that is now regulated by the [Statute.]" (Pl. Mot. 5.) Second, Plaintiff argues that its members will face economic harms imposed by the Statute—namely, (1) increased shipping costs; (2) increased costs associated with implementing age-verification procedures; and (3) loss of revenue and sales. (Id. at 5–6.) Each of these alleged injuries is discussed below in turn. Neither harm, however, is sufficiently demonstrated by affidavit or other evidence to satisfy Article III's standing requirements. See Cacchillo, 638 F.3d at 404.

        a) *Possible Threat of Enforcement.*

As to the threat of enforcement, courts apply a three-prong test to decide whether a plaintiff has standing to challenge the constitutionality of a law before it has been enforced against it. See

Susan B. Anthony List, 573 U.S. at 159; see also Nastri v. Dykes, 2024 WL 1338778, at *1 (2d Cir. Mar. 29, 2024).  In such pre-enforcement challenges, as here, a plaintiff must show that the "threatened enforcement" of the law against it is "sufficiently imminent."  Id.  This imminence showing requires a plaintiff to demonstrate that (1) it "inten[ds] to engage in a course of conduct" that arguably involves a "constitutional interest;" (2) its intended conduct is "proscribed by the challenged law;" and (3) "there exists a credible threat" that it would be "prosecut[ed]" for violating that law.  Vitagliano v. Cnty. of Westchester, 71 F.4th 130, 136 (2d Cir. 2023) (citing Susan B. Anthony List, 573 U.S. at 159).  While many pre-enforcement challenges involve a threat of criminal prosecution, the "fear of civil penalties" can likewise be sufficient.  Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 382 (2d Cir. 2000); see also Susan B. Anthony List, 573 U.S. at 165 ("[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review.").

The parties dispute whether Plaintiff has established all three imminence elements.  In Defendant's view, Plaintiff fails to sufficiently demonstrate—by affidavit or other evidence—that any of its members "has a concrete 'intention to engage in a course of conduct' prohibited by [the Statute] … that would subject it to a 'credible threat' of enforcement."  (Def. Opp. 8–10 (quoting Vitagliano, 71 F.4th at 137–38; Cayuga Nation v. Tanner, 824 F.3d 321, 331–32 (2d Cir. 2016).)  Plaintiff counters that it has sufficiently demonstrated the intent of one of its members—NOW Foods—to engage in activity prohibited by the Statute and a credible threat that it will be prosecuted thereunder.  (Pl. Rep. 1–2).  Defendant has the better of the argument.

Generally, "courts are loath to find standing based on fear of a future injury alone." Brooklyn Branch of Nat'l Ass'n for Advancement of Colored People v. Kosinski, 657 F. Supp. 3d 504, 516 (S.D.N.Y. 2023) (Failla, J.).  But in certain circumstances, including when a plaintiff anticipates being prosecuted under an unconstitutional law, a risk of enforcement can be a

11

sufficiently concrete harm to support standing. See Cayuga Nation, 824 F.3d at 331 ("Preenforcement challenges to criminal statutes ... are cognizable under Article III."). When a party "seeks review of a prohibition prior to its being enforced, 'somewhat relaxed standing' rules apply." Centro De La Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 110–11 (2d Cir. 2017) (quoting Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013)). However, in this procedural posture, a plaintiff cannot rest on mere allegations to establish standing for a preliminary injunction; rather, a plaintiff "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Cacchillo, 638 F.3d at 404 (quoting Lujan II, 504 U.S. at 561) (cleaned up).

The Court begins by addressing the first two of the Susan B. Anthony List imminence conditions: whether Plaintiff adequately established the intention of any of its members to engage in conduct violative of the Statute. It is not enough for plaintiffs to set forth a vague intention to expose themselves to harm at an indeterminate time. See Lujan II, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis in original)). Moreover, a plaintiff's "few words of general intent," without substantial evidence of plans, "do not support a finding of [an] 'actual or imminent' injury."[8] Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund, 88 F.4th 103, 111 (2d Cir. 2023) (quoting Carney, 592 U.S. at 64). Instead, "plaintiffs must describe their likely future injuries with specificity." Kosinski, 657 F. Supp. 3d at 517.

Plaintiff has not met that burden here. In connection with its moving papers, Plaintiff submits two affidavits—one from Dr. Daniel Fabricant (the CEO of NPA) and one from James Emme (the CEO of NOW Foods, a NPA member). (See ECF Nos. 36-2 ("Dr. Fabricant Aff."), 36-

---

[8] This analysis is "highly fact-specific." Nuveen, 88 F.4th at 111.

3 ("Emme Aff.").) Without providing any further detail, Dr. Fabricant's affidavit states the following: "[o]ne or more of NPA's members are directly involved in the selling and/or distribution of products containing creatine, green tea extract, raspberry ketone, garcinia cambogia, and/or green coffee bean extract." (Dr. Fabricant Aff. ¶ 3.) James Emme's affidavit is just as threadbare. It states in relevant part: "Now Foods is a member of National Products Association ('NPA'). Now Foods owns and operates Fruit Yield. Fruit Yield sells products containing creatine, green tea extract, raspberry ketone, garcinia cambogia, and/or green coffee bean extract." (Emme Aff. ¶¶ 3–5.) Neither affidavit, however, provides specifics as to any NPA member's concrete "intention to engage in a course of conduct" prohibited by the Statute. Vitagliano, 71 F.4th at 137–38.

For example, neither affiant identifies a single product that Plaintiff's members intend to continue selling subject to the Statute's age-based sales restriction, nor any product that its members intend to continue selling without such restrictions. While both affidavits state that NPA members sell and/or distribute products containing certain ingredients referenced in the Statute, neither affiant indicates whether those products are labeled or represented as being for weight loss or muscle building, nor whether members intend to continue selling those products now that the Statute is effective and if so, whether they intend to age-restrict. (See Dr. Fabricant Aff. ¶ 3; see also Emme Aff. ¶¶ 3–5.)

Plaintiff's current evidence is a far cry from the submitted evidence Judge Carter found sufficient to confer Article III standing in CRN. In that case, one of the organizational plaintiff's members—XYMOGEN—provided a detailed affidavit explaining that it had at least six specific products that, if not age-restricted, could subject the company to enforcement. See CRN, 2024 WL 1700036, at *4. XYMOGEN's Director of Regulatory Affairs further alleged that if the company voluntarily redesigned labels for its impacted products, it must temporarily age-restrict the products in New York until the new labels are available or halt the sale of the affected products

13

until all existing inventory is out. See id. (citing Case No. 24-cv-1881-ALC, ECF No. 23 ¶¶ 19–21). After considering these specific facts, Judge Carter concluded that "[t]he question of how to handle inventory in stock with current label claims if age verification protocols are not implemented before the Statute takes effect is sufficient to demonstrate injury in fact." Id.

Unlike the plaintiff in CRN, Plaintiff here has not proffered any evidence of "a certainly impending injury that could very well expose [one of its member] compan[ies] to the threat of enforcement." (Id.) The absence of any specific facts in Plaintiff's affidavits describing its members' intentions to engage in conduct violative of the Statute makes it impossible for the Court to determine whether the NPA members' alleged fears of enforcement are sufficiently imminent, or merely wholly imagined or speculative. See Faculty, 11 F.4th at 74. Accordingly, the Court concludes that Plaintiff has utterly failed to carry its burden to set forth specific intentions of conduct from which the Court may make an objective determination on standing. See Vitagliano, 71 F.4th at 137–38.

Because Plaintiff has not sufficiently demonstrated—by affidavit or other evidence—that any of its members has alleged an "intent[]" to engage in conduct violative of the challenged Statute, the Court need not consider the last of the Susan B. Anthony List imminence conditions: whether there is a credible threat that any of Plaintiff's members will be prosecuted for their activities. See Susan B. Anthony List, 573 U.S. at 159.

        b)    *Possible Economic Harms.*

The Court is also unpersuaded that Plaintiff sufficiently demonstrates the Statute will force its members to face a substantial risk of suffering economic harms that are actual or "sufficiently imminent" to support standing. See Lacewell v. Office of Comptroller of Currency, 999 F.3d 130, 146–47 (2d Cir. 2021) (allegations of anticipated loss of future revenue speculative where plaintiff did not demonstrate loss was "inevitable" or sufficiently likely). Here, Plaintiff alleges its

14

members will suffer the following future economic harms under the Statute: (1) increased shipping costs; (2) increased costs associated with implementing age-verification procedures; and (3) loss of revenue and online sales to brick-and-mortar stores. (Pl. Mot. 5–6.)

But as with its asserted threat-of-enforcement-related injuries, Plaintiff's affidavits lack any specific detail demonstrating that any of its members has actually incurred the above costs to comply with the Statute. (See Dr. Fabricant Aff. ¶¶ 4–13; see also Emme Aff ¶¶ 9–21.) Nor has Plaintiff shown that such a financial undertaking is sufficiently imminent for any of its members. (See id.) For example, despite the Statute being effective for more than seven weeks, Plaintiff has not demonstrated that any of its member has actually incurred costs to comply with the statute.

Again, this stands in marked contrast to the evidence submitted in CRN, which conclusively demonstrated that CRN's members had already incurred such costs. Compare CRN, 2024 WL 1700036, at *4 (holding as sufficient to demonstrate standing "compliance costs that [a plaintiff's] members have already incurred to assess which products are affected and to implement age verification") (citing Case No. 24-cv-1881 (ALC), ECF No. 22, ¶ 15; ECF No. 24, ¶ 14; ECF No. 3, ¶¶ 12–13, 16–17, 21, 24–29; Compl. ¶¶ 165–180)), with Emme Aff. ¶¶ 16–18 (discussing higher costs that NOW Foods may incur at some indeterminate point in the future). Likewise, while Plaintiff's counsel speculates about a potential loss of its members customers and revenues, see Pl. Mot. 5, no affiant provides evidence that any of Plaintiff's members have decided to exit the market, that any of their customers have actually been lost, or that any of their orders have actually been reduced. See, e.g., Parker Madison Partners v. AirBnB, Inc., 283 F. Supp. 3d 174, 181 (S.D.N.Y. 2017) (allegation of "substantial lost revenues," without specifics of "any current or potential clients that have been lost" is too conclusory to confer standing). But cf. Grand River Enters. Six Nations v. Boughton, 988 F.3d 114, 121 (2d Cir. 2021) ("A regulated entity may plead an 'injury in fact' by plausibly alleging compliance costs associated with an increased regulatory

15

burden."); see also Clementine Co., LLC v. Adams, 74 F.4th 77, 86 (2d. Cir. 2023) (finding that Plaintiffs plausibly alleged injury in fact because of compliance costs associated with hiring additional staff to check proof of vaccination requirement); Carter v. HealthPort Techs., LLC, 822 F.3d 47, 55 (2d Cir. 2016) ("Any monetary loss suffered by the plaintiff satisfies this element; even a small financial loss suffices.") (internal citation and quotation marks omitted).

At least until the Statute causes one of Plaintiff's members to (1) implement or invest in company-wide age-verification procedures; (2) lose sales; or (3) incur higher delivery costs, Plaintiff's alleged future losses will remain purely "conjectural or hypothetical," rather than "imminent" as the Constitution requires. Lujan II, 504 U.S. at 560 (internal quotation marks omitted). Accordingly, Plaintiff does not demonstrate that any of its members' future economic harms are "sufficiently imminent" to confer Article III standing. Lacewell, 999 F.3d at 147.

\* \* \*

For the reasons explained above, the Court lacks subject matter jurisdiction over this dispute because Plaintiff has not demonstrated Article III standing to bring its claims as an organization. Where, as here, "a court determines it lacks subject matter jurisdiction, it cannot consider the merits of the preliminary injunction motion and should dismiss the action in its entirety." Do No Harm, 96 F.4th at 120. Because there is no case or controversy before this court, the Court declines to consider Plaintiff's motion for a preliminary injunction and dismiss the case without prejudice.[9] See Rojas, 793 F.3d at 259 (affirming dismissal for lack of standing on a

---

[9] It bears mentioning that "there is no need to proceed" with a preliminary injunction hearing where subject matter jurisdiction is lacking. See, e.g., Pietsch v. Bush, 755 F. Supp. 62, 68 (E.D.N.Y. 1991) (denying request for a preliminary injunction hearing because "the Plaintiff has failed to allege an injury in fact, [so] there is no need to proceed ... since the Court does not have subject matter jurisdiction to hear this case"); see also Do No Harm v. Pfizer Inc., 646 F. Supp. 3d 490, 501 (S.D.N.Y. 2022), aff'd 96 F.4th 106 (2d Cir. 2024). In any event, the parties did not request a preliminary injunction hearing, and oral argument would not have assisted the Court. See, e.g., AD/SAT v. AP, 181 F.3d 216, 226 (2d Cir. 1999). That is because, like in Do No Harm, Plaintiff here has not made any request for discovery on jurisdictional facts to establish standing and has not requested an evidentiary hearing or other opportunity to present evidence relevant to the existence of jurisdiction. See Do No Harm, 96 F.4th at 121 (citations

16

preliminary injunction motion); see also e.g., Roberts v. Bassett, 2022 WL 785167, at *1 (E.D.N.Y. Mar. 15, 2022) ("Thus, as there is no case or controversy before this court, the court declines to consider Plaintiffs' motion for a preliminary injunction, and the case is DISMISSED."), aff'd, No. 22-622-cv, 2022 WL 16936210 (2d Cir. Nov. 15, 2022) (affirming dismissal of case at the preliminary injunction stage).

### III.   CONCLUSION

For the above reasons, Plaintiff's Motion for a Preliminary Injunction is DENIED, and this action is DISMISSED without prejudice for lack of subject-matter jurisdiction. Accordingly, Defendant's Motion to Dismiss is also DENIED without prejudice. The Clerk of Court is respectfully directed to close ECF Nos. 36 and 41.

**SO ORDERED.**

Dated:   June 13, 2024
         Central Islip, New York

                                                              /s/ JMA
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE

---

omitted). Nor has Plaintiff identified any factual disputes related to standing. See Blakeman v. James, 2024 WL 1604231, at *2 (E.D.N.Y. Apr. 12, 2024). Moreover, although Plaintiff does not argue that the case should proceed so that they may amend the SAC, permitting amendment is inappropriate because—in the context of a motion for preliminary injunctive relief—plaintiffs can only establish standing by affidavit or other evidence. See Do No Harm, 96 F.4th 120 (finding that because the filing of a temporary restraining order/preliminary injunction motion "subjected [the plaintiff] to the heightened burden of demonstrating standing under a summary judgment standard," simply denying the preliminary injunction motion and permitting the case to move forward at the pleading stage "would amount to reversing the case to a prior stage") (emphasis in original); see also Blakeman, 2024 WL 1604231, at *2.